IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

BENJAMIN J. ROSCOE and
GERALDINE M. ROSCOE,

    Plaintiffs,

vs.                                                           CIV # 98-1500 BB/LFG

FEDERAL HOME LOAN MORTGAGE
ASSOCIATION, et al.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

On pro se Plaintiffs' action for refund of prepayment premiums on a commercial mortgage loan, and for allegations of false and deceptive business practices, in violation of NMSA 1978 §§ 57-12-2(A) and 57-12-2(D), the Defendants filed this motion for summary judgment on all claims (Doc. 22). For the reasons stated below, the Defendants' motion for summary judgment is granted.

## FACTS

Pro se Plaintiff Benjamin J. Roscoe ("Mr. Roscoe"), who obtained a PhD from Johns Hopkins University in Electrical Engineering in 1967, has been investing in commercial real estate since 1968. Roscoe Dep. at pg. 4, 5. Over the past 30 years, he has purchased between 10 and 12 income producing properties. Roscoe Dep. at pg. 8. On August 20, 1993, the pro se Plaintiffs, Benjamin J. and Geraldine M. Roscoe ("the Roscoes"), entered into a Multifamily Loan Submission Agreement in the amount of $2,325,000 with McMaster & Company, Inc. ("McMaster"). *See* Multifamily Loan Submission Agreement; Roscoe Dep. at pg. 26. The

purpose of the loan was to refinance an existing loan from Defendant, Federal Home Loan Mortgage Association ("FHLMA"), on The Brooks Apartments, a property owned by the Roscoes. The Agreement stated that refinancing would be sought under FHLMA's 1993 refinance program, and that the request would be submitted to, and would require the approval of, both an eligible FHLMA lender and FHLMA.  Id.  Mr. Roscoe understood that if he qualified for refinancing under the 1993 refinance program, then the bank making the loan, Defendant Bank United of Texas, FSB ("Bank United"), would sell the mortgage to FHLMA.  Roscoe Dep. at pg. 19-20, 23.

On June 2, 1994, in response to the loan application submitted by Plaintiffs, Bank United sent Plaintiffs a commitment letter, advising that the loan would be sold to FHLMA and that such loan was subject to Plaintiffs' compliance with the terms set forth in both that letter and the FHLMA commitment letter dated May 31, 1994, attached thereto.  *See* June 2, 1994 Bank United Letter.  This letter set forth the terms of the loan, namely the 20-year term of the loan, and that such loan could be prepaid pursuant to certain requirements, including a prepayment premium calculated in accordance with a yield maintenance formula, with a yield maintenance period of 10 years.  Id.  The Roscoes understood that the loan would be governed by the terms of the letter and accepted such terms by signing the June 2, 1994 Bank United letter on June 7, 1994.  *See* June 2, 1994 Bank United Letter; Roscoe Dep. at pg. 58.

On June 28, 1994, the Roscoes executed a Loan Agreement with Bank United, requiring execution and delivery on that date of certain loan documents.  *See* Loan Agreement.  On that same date, the Roscoes also executed a Borrower's Affidavit, signifying their acceptance of, among other things, the rights and obligations of the Loan Agreement.  Id.  Also on that date, the

Roscoes executed a Multifamily Note, which expressly incorporated by reference a Rider to Multifamily Note (Prepayment Premium/Yield Maintenance) ("the Rider"). *See* Multifamily Note. The Roscoes then executed the Rider, which expressly amended and supplemented the Multifamily Note, and which expressly waived the right of the Roscoes to prepay the loan, either in whole or in part, prior to its maturity date, except as expressly provided in the Rider. *See* Prepayment Rider. The Roscoes further acknowledged, via the terms of the Rider, that "the prepayment premium provisions of this Rider are a material part of the consideration for the Loan." Id. The Plaintiffs read the Rider before signing it, were capable of understanding the prepayment premium formula from a mathematical point of view, understood that the prepayment premium was meant to assure FHLMA of its assumed reinvestment rate, and were given ample opportunity and time, without pressure, to review and sign all loan documents. Roscoe Dep. at pg. 25, 68-69, 80-81, 105-106.

In October 1996, Mr. Roscoe decided to refinance the Brooks Apartments again due to a fall in interest rates and the availability of significant cash flow. Id. at pg. 87-89, 120. Bank United issued a payoff quote to Mr. Roscoe, indicating that the payoff premium, pursuant to the formula, would be $394,684.39. *See* Bank United Payoff Statement; Roscoe Dep. at pg. 95, 98. Mr. Roscoe then made a business decision to pay the premium, refinanced the Brooks Apartments through Secore Financial Corporation, and yielded more than $1,000,000 cash from the settlement. Roscoe Dep. at pg. 87-89, 119-120. The Roscoes then filed this action, requesting a refund of the prepayment penalty paid, alleging, *inter alia*, that (1) the rider is an unenforceable amendment to the loan to which they never agreed, (2) the Defendants were unjustly enriched as a result of receipt of the prepayment penalty fee, (3) no consideration was given to the Plaintiffs by

the Defendants for the obligation to pay the prepayment premium, (4) the contract is invalid due to vagueness and ambiguity, (5) the rider is an illegal promise, (6) the amount of the prepayment period is unconscionable, and (7) Defendants' breach of contract gives rise to a cause of action for consumer fraud and deceptive business practices. The Defendants filed a motion for summary judgment on all counts, the Plaintiffs filed a cross-motion for summary judgment on all counts.

## ANALYSIS

### Standard of Review

Pursuant to the Federal Rules of Civil Procedure, a motion for summary judgment may be granted only when "there is no genuine issue as to any material fact and … the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, we examine "the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." Abercrombie v. City of Catoosa, 896 F.2d 1228, 1230 (10th Cir. 1990). Although the material submitted by the parties in support of and in opposition to the motion must be construed liberally in favor of the party opposing the motion, Harsha v. United States, 590 F.2d 884, 887 (10th Cir. 1979), the burden on the moving party may be discharged by demonstration to the district court that there is an absence of evidence to support the nonmoving party's case. Celotex Corp. v. Carett, 477 U.S. 317, 325 (1986). "In such a situation, the moving party is entitled to judgment as a matter of law 'because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.'" Rangel v. El Paso Natural Gas Co., 996 F.Supp. 1093, 1095 (D.N.M. 1998) (quoting Celotex, 477 U.S. at 322). A pro se litigant's pleadings are to be construed liberally,

Haines v. Kerner, 404 U.S. 519, 520-521 (1972), but the trial court does not assume the role of advocate for the pro se litigant, and need not accept his conclusory allegations. Hall v. Belmon, 935 F.2d 1106, 1110 (10th Cir. 1991). Mere opinions and conclusory allegations, unsupported by the evidence, are not sufficient to withstand summary judgment. Kidd v. Taos Ski Valley, Inc., 88 F.3d 848, 853 (10th Cir. 1996).

**Introduction**

The Roscoes' cause of action, although couched in the terms of a multi-count complaint, alleging unconscionability, invalidity, and unenforceability of a prepayment rider in a commercial mortgage contract, along with a deceptive business practices claim, effectively encompasses a generalized two-prong inquiry into the validity and enforceability of the contract in question. The answers to these two questions will properly address the Plaintiffs' multiple causes of action, and as discussed *infra*, will summarily dispose of each.

**Validity of the Contract**

The laws of contract and real property are normally the province of state law. Aronson v. Quick Point Pencil Co., 440 U.S. 257, 262 (1979). Ordinarily, to be legally enforceable, a contract must be supported by an offer, acceptance, consideration, and mutual assent. Garcia v. Middle Rio Grande Conservancy Dist., 121 N.M. 728, 731, 918 P.2d 7, 10 (1996). Mutual assent is based on objective evidence, not the private, undisclosed thoughts of the parties; what is operative is the objective manifestation of mutual assent by the parties, not their secret intentions. Pope v. Gap, Inc., 125 N.M. 376, 379, 961 P.2d 1283, 1286-1287 (1998). New Mexico has a strong public policy in favor of freedom of contract, which requires enforcement of contracts unless they clearly contravene some law or rule of public morals or violate some fundamental

5

principle of justice.  Reagan v. McGee Drilling Corp., 123 N.M. 68, 72, 933 P.2d 867, 871 (1997).

Absent a showing of fraud, misrepresentation, or other wrongful acts, each party to a written contract is generally presumed to know its terms, to have agreed to its provisions, and to be bound thereby under New Mexico law.  Ballard v. Chavez, 117 N.M. 1, 868 P.2d 646 (1994). Such assenting parties must accept the burdens of the contract along with its benefits.  Russell v. Richards, 103 N.M. 48, 51, 702 P.2d 993, 996 (1985).  In the absence of an ambiguity, a court must interpret and enforce the clear language of the contract, and cannot make a new agreement for the parties.  Montoya v. Villa Linda Mall, Ltd., 110 N.M. 128, 129, 793 P.2d 258, 259 (1990).  A contract will be deemed ambiguous if the court determines that it can reasonably and fairly be interpreted in different ways.  Mark V, Inc. v. Mellekas, 114 N.M. 778, 781, 845 P.2d 1232, 1235 (1993).  In interpreting a contract, the court must consider the contract as a whole and give significance to each part.  Kirkpatrick v. Introspect Healthcare Corp., 114 N.M. 706, 711, 845 P.2d 800, 805 (1992).

The mortgage loan in question, including the prepayment rider, clearly constitutes a valid contract under New Mexico law.  The Roscoes read the terms of the agreement, understood those terms, and signified their acceptance by signing both the agreement and the rider.  Furthermore, there is no evidence of fraud or misrepresentation on the part of the Defendants in securing the loan.  To the contrary, Mr. Roscoe himself admitted in his deposition that he fully understood the terms in the entire loan agreement, including those in the prepayment rider.  Mr. Roscoe cannot now avoid the terms of the loan agreement.

Mr. Roscoe attempts to argue that the terms of the loan agreement, which he signed, constituted the entire agreement, and that the prepayment rider, which he also signed, was not part of the loan agreement. In other words, Mr. Roscoe argues that the loan agreement, by its terms, states that the parties must *agree in writing to amend the loan agreement* before the parties can actually amend the agreement. Looking at the agreement as a whole, the Court disagrees. The prepayment rider was incorporated by reference into the note itself, attached thereto, and separately agreed upon by Mr. Roscoe. Mr. Roscoe cannot expect this Court to believe that he agreed to the terms of the note, including the attached prepayment rider, but that such rider is invalid because a prior written agreement to amend was not executed. The absurdity of such argument need not be further discussed.

In sum, it is undisputed that the Roscoes knew about the prepayment premium before they entered into the loan agreement, signed the written document containing the prepayment provision, and thereby agreed to be bound by the terms of the agreement. Therefore, the Court finds that the commercial mortgage loan agreement, including the prepayment premium, constitutes a valid contract.

**Enforceability of the Prepayment Premium**

The New Mexico legislature considered prepayment premiums in residential mortgage loans, and expressly prohibited them in such loans obtained between March 15, 1979 and October 15, 1982. *See* NMSA 1978 §§ 48-7-19 and 56-8-30. Thereafter, prepayment premiums were left to the parties, even in residential loans. The issue of the enforceability of prepayment premiums in commercial mortgage loans has not been squarely addressed in the state of New Mexico. The fact that the legislature failed to include such loans in the earlier ban, however, may indicate fewer

public policy concerns in commercial lending, where the parties are generally more sophisticated and more equal bargaining capacity.

The issue has, however, been addressed by a North Carolina court, where it was held that such prepayment provisions of a note executed in connection with a large commercial real estate loan were valid and enforceable. *See, generally,* West Raleigh Group v. Mass. Mut. Life Ins. Co., 809 F.Supp. 384 (E.D.N.C. 1992). The authority cited by the Defendants in their brief further establishes legal recognition of the enforceability of commercial mortgage prepayment premiums in the case of voluntary prepayment by the borrower *(see*, *e.g.*, Tyler v. Equitable Life Assur. Soc., 512 So.2d 55 (Ala. 1987); First Nat. Bank v. Equitable Life Assur. Soc., 510 N.E.2d 518, *appeal denied*, 515 N.E.2d 107 (Ill. 1987); First Indiana Fed. Sav. Bank v. Maryland Dev. Co., 509 N.E.2d 253 (Ind. App. 1987)). The Defendants also offer many policy-based justifications for such enforcement, such as protection of lenders from damage due to lower interest rates (*see* Sacramento Sav. & Loan Ass'n v. Superior Ct., 186 Cal.Rptr. 823, 826 (Cal. Ct. App. 1982)), amortization of administrative losses, short-term investment losses, and adverse tax liability (*see* Chesnut Corp. v. Bankers Bond & Mortgage Co., 149 A.2d 48 (Pa. 1959), and risk allocation between lenders and borrowers (*see* Dale A. Whitman, Mortgage Prepayment Clauses: An Economic and Legal Analysis, 40 U.C.L.A. L. Rev. 851, 862, 873 (1993)).

The Court finds such rationale persuasive. Mr. Roscoe accepted the terms of the prepayment premium voluntarily. He understood the terms and the formula involved in calculating the premium, and he was given ample time to review the rider prior to acceptance of its terms. As such, the Court finds that the prepayment rider is, indeed, an enforceable contract under New Mexico law.

The Roscoes next assert that the prepayment premium is still unenforceable due to unconscionability, unjust enrichment, and the illegality of the penalty. It is true that when the terms of a contract are unreasonably favorable to one party, a contract may be held to be substantively unconscionable. Monette v. Tinsley, 975 P.2d 361, 396 (Ct. App. N.M. 1999). However, the threshold for such a holding is very high, requiring a finding that the terms are such that "no man in his senses and not under delusion would make on the one hand, and … no honest and fair man would accept on the other." Id. (quoting In re Friedman, 64 A.D.2d 70, 407 N.Y.S.2d 999, 1008 (1978)). Moreover, a person receiving a benefit will only be deemed to have been unjustly enriched if the retention of such benefit would be unjust. Sunwest Bank of Alb. v. Colucci, 117 N.M. 373, 376, 872 P.2d 346, 349 (1994). Therefore, "[a]lthough a contract may be declared void where it is unconscionable and oppressive in its terms, nevertheless, the fact that some of the terms of the agreement resulted in a hard bargain or subjected a party to exposure of substantial risk, does not render a contract unconscionable where it was negotiated at arm's length, and absent an affirmative showing of mistake, fraud or illegality." Smith v. Price's Creameries, 98 N.M. 541, 545, 650 P.2d 825, 829 (1982). Given Mr. Roscoe's PhD status, his investment experience in excess of 30 years, and his admitted ability and capacity to understand the terms of the agreement and the prepayment formula, coupled with the relative value and price of the transaction, there is no evidence that either the mortgage or the prepayment rider are unconscionable.

Nor does the disparity between the prepayment penalty and the amount of the loan rise to the level of unjust enrichment for the Defendants, since the retention of the prepayment premium, necessary to secure their reinvestment rate, would not be unjust. Finally, it cannot be said that the

prepayment rider constitutes an illegal promise, since the Plaintiffs voluntarily sought to invoke the privilege of prepayment in order to secure a lower interest rate with another lender. *See* West Raleigh Group, 809 F.Supp. at 390-391. Hence, the prepayment premium is enforceable.

Therefore, the commercial mortgage loan agreement between the Roscoes and the Defendants constitutes both a valid and an enforceable contract as a matter of law, and the parties are bound by the terms of the agreement. Hence, the Court finds that the Defendants' motion for summary judgment relating to counts (1) through (6) should be granted.

**The Unfair Practices Act**

Although the Plaintiffs have asserted claims under both NMSA 1978 §§ 57-12-2(A) and 57-12-2(D) of the Unfair Practices Act, these sections of the New Mexico Code are definitional provisions, in which no causes of action lie. However, for the purposes of this opinion, the Court will take judicial notice that the Plaintiffs are attempting to state a cause of action under NMSA 1978 § 57-12-3.

Under New Mexico law, it is unlawful to implement "unfair or deceptive trade practices and unconscionable trade practices in the conduct of any trade or commerce." NMSA 1978 § 57-12-3. The term "unfair trade practice" is defined as "any false or misleading oral or written statement … *knowingly made* … which tends to or does deceive or mislead any person …" NMSA 1978 § 57-12-2(D) (emphasis added). In order to support such a claim, evidence must be presented that a party knowingly made a false or misleading statement in connection with the negotiation of the agreement. Stevenson v. Louis Dreyfus Corp., 112 N.M.97, 811 P.2d 1308 (1991). Plaintiffs provide no evidence of a statement Defendants made with knowledge it was false or misleading.

Alternatively, the term "unconscionable trade practice" is defined as "any act or practice … which to a person's detriment (1) takes advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree; or (2) results in a gross disparity between the value received by a person and the price paid." NMSA 1978 § 57-12-2(E). By the plain meaning of the statute, it appears obvious that the Court need take into consideration the knowledge, ability, skill and capacity of the Plaintiffs, along with the differentiation between the value received by the Plaintiffs and the price paid for the mortgage loan in making such a determination. As discussed *supra*, the prepayment rider is not unconscionable. The Court has been unable to locate any reference on the record, not to mention in the motion before this Court, by the Defendants to an Unfair Practices Act claim by the Plaintiffs. Given this observation, this Court has the discretion to grant summary judgment *sua sponte* if the losing party was on notice that it had to come forward with all its evidence, and had an opportunity to present that evidence in court. *See*, *e.g.*, Sports Racing Serv. v. Sports Car Club of America, 131 F.3d 874, 892 (10th Cir. 1997). As such, it is the judgment of this Court that summary judgment *sua sponte* should be entered on the Plaintiffs' claim under the Unfair Practices Act, NMSA 1978 § 57-12-3.

## CONCLUSION

For all the foregoing reasons, the Defendants' motion for summary judgment will be granted, the Plaintiffs' cross motion for summary judgment will be denied, and all subsequent Plaintiffs' motions before the Court will be denied. This action is therefore dismissed.

## ORDER

IT IS THEREFORE ORDERED that Defendant's March 26, 1999 motion for summary judgment (Doc. 22) be, and hereby is, GRANTED. This action is hereby DISMISSED. All pending Plaintiff motions are hereby DENIED.

DATED June 28, 1999.

_____
BRUCE D. BLACK
UNITED STATES DISTRICT JUDGE

**Attorneys:**

**For Plaintiffs**
Benjamin J. and Geraldine M. Roscoe
Pro Se Plaintiffs
5328 Montgomery Blvd., N.E.
Albuquerque, NM 87110

**For Defendant Federal Home Loan Mortgage Association**
Thomas J. McBride, Esq.
Hinkle, Cox, Eaton, Coffield & Hensley, L.L.P.
Post Office Box 2043
Albuquerque, NM 87103-2043

**For Defendant Bank United of Texas, FSB**
Timothy M. Sheehan
Kim A. Griffith
Sheehan, Sheehan, & Stelzner, P.A.
Post Office Box 271
Albuquerque, NM 87103